Case 12-5903, Southern Rehabilitation Group et al. v. Secretary of Health and Human Services et al. Argument not to exceed 15 minutes per side. Ms. Caffey for the appellant. May it please the Court, Your Honors, I've reserved four minutes and the clerk has already adjusted the clock for me. Thank you very much. May it please the Court, I'm Anne Caffey here on behalf of the appellant, Dr. Jim Bloom, who is here in the courtroom with his office administrator, Crystal Thompson, second row there. No court in this country has encountered the case that we're asking you to hear this morning. It is unprecedented procedurally and factually. You will be the first court to ever address the issue that we're placing before you. There are some that are similar, but this one has five critical procedural prerequisites that no case here before has had under the Medicare Act. They are, whether a provider who is bringing claims for review of payment or nonpayment or underpayment, who has, number one, exhausted his administrative revenues, number two, to a final decision, number three, the decision is adverse, number four, brings along with his claim those that are inextricably intertwined based on state common law and statutory law, constitutional claims, and other federal statutes, number five, in the same action, pursuant to 42 U.S.C. 405G and 405H, along with his request for review of payment of the Medicare claims. It's always helpful as an appellant to frame the issues the way you would like them to be framed, because you frame them in a way that then leads to the conclusion that you like. You sort of gloss over this issue of exhaustion by saying, and then brings along other claims. Why does somebody get to bring along other claims that they didn't present, in this case, to the agency? That doesn't strike me as having exhausted those claims. Well, what you exhaust, Your Honor, is the claims for payment on Medicare claims. You can't bring, and you can't bring claims for negligence, fraud, and gross negligence of the contractors who are reviewing the Medicare claims in the administrative review process. Only the court can do that. That's why we're arguing those inextricably intertwined claims. Let's assume for a second that you can't sue the contractors because they're protected by some derivative immunities. Yes. You're also bringing these – bringing along claims against the government as well, are you not? We are bringing claims against the contractors. In addition – not the contractors. I want you to ignore the contractors and assume you can't sue the contractors. You're bringing claims against the government beyond the claim for the unpaid reimbursements as well, are you not? Yes, Your Honor. And you didn't exhaust those. But you can't bring within the administrative realm claims for negligence, gross negligence, fraud, misconduct, constitutional violations. Those claims arise and are generated by what is happening in the administrative review process. Let me stop you there for one second. When you say you can't bring them, if those were reasons you were not paid, why couldn't you at least technically say, Madam Secretary, we want our money. And among the reasons that we want our money are the reason you're not giving us money are at least – I don't know about state law, but maybe a bridge too far at least. You're not giving us our money because you're doing something unconstitutional or you're not giving us our money because of someone's negligence, that sort of thing. Well, those are the reasons, and you do assert those at each level when you're saying – Did you assert them when you filed at lower levels? I thought you only – Yes, deprivation of due process rights. Nobody's hearing these claims. Nobody's processing these claims. So are you saying that you did present those to the Secretary? At which stages? At the very initial stage when Dr. Little was put under an unlawful progressive corrective action in the very first instance and was required to provide additional documentation, saying this is unlawful but we will comply, and then in particular the Group 1 claims, which are some 8,900 claims, which have sat for now 13 years without – That's separate because we have a question of whether those are included, but with respect to the ones that ultimately you did get some money for, argue about how much, but you did get some money for, if I go to your filings at initial determination or redetermination, reconsideration, did you put in those constitutional negligence fraud claims? I will be very candid with Your Honor to say that at each level, each thing is raised – I cannot say. That record is 140,000 pages. It has never been produced by the government. No, but you should have copies of whatever documents you filed, shouldn't you? We have some, but not 140,000 pages. I would think counsel – I just want a straight answer – when you filed a claim, some claim, did you say, and pay us because what you're doing is unconstitutional or what you're doing is negligent or what you're doing is fraudulent? At certain levels, but I cannot tell you at what levels with regard to what claims and what group, to be very candid. I was not – actually, Dr. Little proceeded pro se through the entire administrative process. You probably explained why the record is 140,000 pages, but to answer – I hope I've answered your question that you can only – you might assert reasons, but whether those are justiciable claims can only be decided by a court reviewing those. And we have sought money damages and are seeking money damages, and the Secretary is not equipped to hear claims like that. Moreover, the administrative record – again, those are generated within the administrative process. That's what gives rise to the claims. Do you have an argument – what is your argument that the government has waived sovereign immunity for that kind of claim? Normally, we can't see – in all of these benefit programs, you can sue the government because of the way that it's set out in the statute. Do you have anything or an argument that says that the government has allowed you to do that kind of claim? Well, certainly, at least with regard to constitutional claims, there's no question because that's going to trump any attempt at sovereign immunity. How do you figure a constitutional claim is going to trump – In terms of it being – allowing it to be heard, whether or not there's relief or damages might be one issue. But the government cannot deprive a due process right. It simply can't. The agent – the party from whom you want this money is a government agency. In particular – You can't sue the sovereign at all, even for constitutional claims, unless the sovereign has waived – in the case of the federal sovereign – unless the sovereign has waived immunity. There's a waiver. There's a waiver. It's a limited waiver. Well, we maintain that the Act allows those claims to be brought once they are properly channeled. I cannot cite you to a case that says the government itself has waived sovereign immunity and opened it up – opened itself up and subjected itself to potential liability under state law, constitutional law, or statutory law claims, except to the extent that some statutes allow – there have been a violation of, say, the Administrative Procedures Act, for example. And they haven't properly promulgated the rules, et cetera. Then there's a waiver of aid. I think it depends on each of the claims that have been brought. In particular, Dr. Little is very interested in pursuing the contractors. And candidly, that would be his primary target. Didn't you just say claims have to be channeled through the administrative process? Wouldn't his other claims have to be at least channeled through the administrative process, regardless of whether the Secretary can grant a relief? The claims that are being channeled are the administrative review claims. And once you have done that, the causes of action that arise as a result of that channeling come up, and then the court has jurisdiction over those. But you have no authority that cooperates that? Well, I think that I do. The Supreme Court in Southie and Illinois Council, in particular with regard to constitutional claims, for example, describes this 405H and 405G as nothing but a channeling requirement, not a bar, not a jurisdictional bar, but as a channeling requirement saying that as long as the constitutional claims, for example, as long as they are brought under the same jurisdictional grant and in conformity with the same jurisdictional requirements as the non-constitutional claims, which we would argue suggests state law, contract, or excuse me, statutory and common law claims. Council, you said Southie? Southie, S-A-L-F-I. Southie. And Illinois Council, both of those. Illinois Council, I know, sorry. S-A-L-F-I. And this court has seized on that identical language, quoting Southie, in Manakee and Livingston Care Center, both of which are cited in the briefs. And it only makes sense that the answers to the question would be yes, you can, because, again, the agency is ill-equipped to handle those kinds of claims. Those claims are generated because of the mishandling of the review process. To allow the secretary or contractors to handle it would be allowing the fox to watch the henhouse, if you will. If your real objective here, as you've just described it, or the doctor's real objective, is to sue the contractors, it would at least appear as if every circuit that's addressed that issue, including our own, has concluded that the carriers are governmental agents for immunity purposes. So how do you get around that immunity, including how do you get around the panel rule that would seem to bind this panel within the Sixth Circuit? I don't think that the law has said that contractors are per se immune. Contractors are not immune when they act fraudulently or outside the scope of their duties, which we have alleged. And, in fact, the Medicare statute itself… I know you've alleged it, but how do they act outside the scope of their duties? They're hired to process these claims. They may have done it extraordinarily poorly, but how is that outside their duties? Acting fraudulently with intent to deprive Dr. Little of the funds? Largely, the issue here is, Your Honors, that Dr. Little was never allowed to even do the discovery to prove the claims. He has simply stated and raised the causes of action, and the district court dismissed them on summary judgment, concluding as a matter of law that one cannot bring such a claim. But if I could get back to you… If we could just go back for just a second. It's hard to engage in this conversation with you because you spin from one subject to another. I asked you, how do you get around sovereign immunity? You said, well, it doesn't apply to fraud. I said, what's your evidence of fraud? You said, well, we don't know because we didn't do discovery. So it's all circular. Well, Your Honor, the government never, ever challenged the sufficiency of the pleading of the amended complaint. When you ask in particular how did they commit the fraud, that would still be developed during discovery. The district court just ruled as a matter of law you can't bring a claim for fraud. And the statute itself imposes a duty of care on the contractors. And it also provides for indemnification by the secretary of contractors for judgments, settlements, and legal fees, which can only make sense if the contractors are potentially liable for their misdeeds. Could you sue HHS for the same fraud? Assuming that an employee of the federal government, as opposed to a contractor, had done the same things the contractors did, whatever that may be. Could you sue that person? Could we sue the agent who did it? Yes. Yes, you can. The agency. Oh, the agency. I'm sorry. Could you sue the employees of the agency for the same failings, whatever they may be, that you're claiming were undertaken by the employees of the carriers? In the face of fraud? I believe so, Your Honor. And under what theory was that enacted? If the employees are acting outside the scope of committing fraud, then they can be held liable, and that liability should be immuted to the government. Do you have a case for that? Not off the top of my head, Your Honor. Okay, counsel, thank you. Thank you. Yes. Thank you. Thank you. Thank you.  I'm a U.S. Acrobat McConkey from the Eastern District of Tennessee. I'm an athlete. The appellant has raised a number of issues in this case, but we believe that those issues can be boiled down and addressed in three main points that I hope to address today, subject to any question the court may have. In a case that has at its core disputed claims for Medicare reimbursement, no suit can be brought against the Medicare program other than a suit for judicial review of the final agency decision as provided in Section 405G. And potential relief available on review is payment of the disputed benefits. Second, the district court probably declined to take jurisdiction of alleged Medicare claims for which the administrative appeals process was never fully completed. And third, except for very specific, limited circumstances that don't apply here, there is no statute that authorizes the payment of interest on disputed claims once they have been paid after an appeal. The court has already recognized, but I want to circle back to it for a moment, that at least in analyzing any claim against the government, we really must begin with recognition of the general principle of sovereign immunity. A plaintiff can bring a suit against the government only to the extent that a right of action is specifically provided by Congress, and then only in the manner as specifically provided by Congress. In this case, the specific statutory authorization of the suit is Section 405G, as incorporated in the Medicare statute. Dr. Little's argument that Section 405G is simply a channeling requirement to get all related causes of action into court is inconsistent with the text of the statute, it's inconsistent with the case law interpreting the statute, and it's inconsistent with the legislative history. Let me ask you about 405G and distinguishing between arguments and remedies. On the argument side, is there any reason that if the claimant alleges that the reason you did not pay was constitutional fraud, negligence, whatever, and they present that all the way up, is there any reason that that cannot then be reviewed if they didn't get their money? That argument? I don't know that the cases have specifically addressed that, Your Honor, but as a practical reality, I don't see why that couldn't occur. Okay. What has happened is, in the court incident, on the remedy side, assuming again that they did all the presentment and exhaustion and said, you didn't pay me, and because of that, I have all these consequential damages, what specifically would prevent that? You seem to say that you can't ever get anything more than just your claim. What provision would you point to on the remedy side? From a textual standpoint, with the statute, I would say that 405G provides not only the means for getting this claim before the court, but it defines the court's power on judicial review. And the court's power on judicial review is limited to the court making error of judgment, affirming, modifying, or reversing the decision of the statutory. And that's all. Is there any case that says that that modification can't be, and you should pay, and you should pay extra because of the damages you've caused? Is there a case that holds that? I think the one case that comes closest to that, and it really only addresses it in a very general sense, is Chaliki, Schwake v. Chaliki, where the Supreme Court recognized, after analyzing the statute and the remedy set forth in 405G and 405H, that Congress specifically has not provided the right to sue for consequential damages or other relief. Thank you, counsel. Certainly. Does it cause you any difficulty as a lawyer when they send you up here to argue that we should look at the plain meaning of 405, but then when we get to the interest claim, we're going to rely on a manual that seems to be clearly inconsistent with the clear language of the interest statute? It says that you don't pay it in 30 days. If it's a clean claim, they get interest. And it doesn't say anything about, but gee, this doesn't apply if we deny the claim in the first instance. Well, I can agree with Your Honor that the manual doesn't read the same as the statute. I would disagree that it's clearly inconsistent, and here's why. The statute… Do you think imposing an additional condition is not inconsistent? I don't think it imposes an additional condition. The statute simply says that claims have to be paid within a certain number of days or interest begins to accrue. Dr. Little wants to read into that that if any portion of the claim is not paid, in other words, if a claim is processed to deny it or if it's processed and downcoded and paid at a different level, that the statute applies there. And I would respectfully submit that that simply reads more into the statute than is present. And what's more, it's in direct contradiction to the Secretary's interpretation of the statute. Not only the manual provision, but the implementing regulation for the statute actually says that the contractor must issue an initial determination on clean claims within 30 days. And if that initial determination is not made, then interest will accrue. That's not what was alleged to have occurred here, and it's not what factually occurred here. What was alleged to have occurred here is that claims were processed to an initial determination. There's no allegation that that determination was made untimely or the payment was issued untimely. Instead, they were processed to deny and later appealed, or they were processed and paid at a different level, and that was appealed. And after the appeal, subsequently Dr. Rowland has been paid at least on the 6,200 exhausted claims after his appeal, and he wants to stretch the statute to apply that condition. And we respectfully submit the statute is just silent as to those circumstances. So your position would be that if the Secretary just tells the contractor, the contractor decides we're not going to pay anything, and someplace off the line it turns out you should pay it, there's no interest, right? It is under these circumstances because, one, clean claims circumstances. I'm sorry? Under all circumstances, unless your position is that a claim can never be cleaned if it was initially denied. Is that your position? That's not our position. I think that is the position that Dr. Little takes, but it's not our position, and it's not the Secretary's position. You don't take that position. He attacks that position. Well, that may be true. All right, so tell me, what is your position on the cleanliness of a claim that is in some way disputable, let's put it that way broadly? Wouldn't it be that there needs to be a determination of cleanliness? I don't think – I'm not aware of anything in the record to this point, and we've not taken the position that the claims were not clean. Okay. So if they were clean, the statute says the government doesn't owe interest unless it waives immunity and agrees to pay interest. It can limit its remedies. That's right. So, interestingly enough, the government has gone out of its way to say, and we'll pay you more if we don't act on a timely basis. It says if the claim is clean and we don't pay you in 30 days, you get interest. There's no dispute that's what the statute says, right? That's what the statute says. So even under Skidmore, where does the agency get the power in the regulation or in the manual to contravene what seems to be the clear intent of Congress? My argument would be that the intent of Congress as applied to this circumstance is not so clear, and that's because the claims were paid. They weren't paid at the level sought, but they were paid. A determination was made, and the statute is all about dealing with processing claims in a timely manner. And there was no allegation that that didn't occur here. But again, you're saying that there was a clean claim, and… I have no reason to say that they weren't. Were none of them denied completely? Were they all paid at some proportionate amount? Some were denied completely. So some were 100 percent denied, and some, if they were paid at 1 percent or 2 percent or 40 percent, weren't they in effect denied as to the remainder? Is your position that you can pay a penny on the dollar and then you're free of interest? Phrased that way, I think that is our position. It's not about the cleanliness of the claim. The reason for denial or payment at a lower level doesn't have to do with something that the doctor didn't do right in submitting the claim. My colleagues want to beat on this some more. I'd like to go over to the 8,900 claims that are stuck in the process. Certainly. And help me on what the new regulation came final over as it was published May 16, 2012. I'll say this is very complicated, so help me if I've got this right. Their view is that they filed these claims, they went to at least the second step, and they haven't gone any further. Now we have this new regulation. As near as I could read it, and tell me if I'm wrong, this says these claims can definitely be proceeded with, but only at the same second level where they're already stuck. And I thought you had argued that under the old regulation there's a thing that says that you can jump to a carrier hearing. Is there a similar provision in the new one? Because I couldn't find it. Help me with all of that. Unfortunately, Your Honor, I don't know the answer to your specific question about whether there's a provision in the new regulation that says you can jump at a step in the process. And candidly, we may have overstated our position under the old regulation. I wondered because they made it seem as if they could. So let's go to practicalities. What should they do? Under the new regs, if you're saying, yes, you have a problem, what should they do? Certainly. I think, first, the district court, of course, denied any claims related to those 8900 claims for failure to exhaust administrative remedies. And clearly, they haven't proceeded all the way through the administrative appeals process. Dr. Dole now points to these new regulations and believes that somehow they may have made a difference in the district court's decision. We disagree because as we read the new regulations, they simply provide that if a provider can demonstrate, and here we only have a fair allegation in complaint, but can demonstrate that they timely requested but did not receive a review determination, which was the old first level of administrative appeal, then that provider would be entitled to proceed with his administrative appeal under the new regulations, the new administrative process, which is a similar process that's now called redetermination. So the secretary has said, if you can demonstrate that you timely requested first level appeal and never got a decision, then we will allow you to proceed with your first level appeal under the new regulations. It simply allows you to be at the same – essentially the same step, right? That's right. Okay. And that's why I asked about the carrier hearing, because at least in principle, that is a way to avoid staying where you are forever at the whim of the contract. That's right. And in most – not all, but most federal administrative law is like that. If you don't get a decision in X or Y time, then something happens that lets you move on. That's right. And you're saying you just don't know whether the new regulations do that or not? Well, what the new regulations would do is allow you to say, hey, I've had claims stuck under the old process at first level appeal and nothing's happened, and in the meantime, the administrative appeals process has changed, so what am I to do now? And the secretary just said, okay, we can remedy that by allowing you to begin or resume with your first level appeal and proceed through the process. You're not answering my question. I'm sorry. There now is a procedure for jumping up the chain if you're simply not getting a decision. There isn't. There is. Oh, I'm sorry. Well, I think it would yield the same result because you are now resuming the administrative appeals process. That doesn't help you unless there's a way to force action, does it? I think it does force action because you're pointing out that you've got claims that were stuck in a previous level appeal under the old process and you now resume it under the new process. So you're back in front of the same decision maker that allegedly hasn't decided at least the old process on paper, and you sounded like you may dispute it, had a way to jump one after 60 days, what the old one said, right? That's right. Okay. Now I'm just asking you, wouldn't you think that would be incorporated in the new one? But I couldn't find it, so. I think the way to do it is to press for your decision at the administrative level, and if you think you have a judicial remedy because no action is being taken despite your request, then to press for – promptly for judicial review, and that didn't occur here. Why do you say it didn't occur here? That's one of the reasons they're in the court of appeals. It didn't occur until seven years after the fact is what I'm saying. But you have argued that they have waived the futility argument by not having advanced it earlier as far as I can see. No. What I'm trying to – and I guess this gets back to the question that was before the district court. One, the remedy's been exhausted. They have not. Two, is there any circumstance that would justify a waiver here? And there's not, and I think one of the factors for that is – A futility argument? I guess I'm not sure what – I don't follow the futility aspect of the question. Well, they say they should get paid on the $8,900 as well. You say no, they haven't exhausted those. They say, yeah, we understand we normally have a duty to exhaust them. We didn't get an agency decision, but we can't get an agency decision. Now, you're quibbling about whether they can jump back into the old process or whatever, but it still remains 11 years or whatever it is for which there's been no action on that. So how can the government in good faith say, oh, don't worry, just press for relief? Because if there was an argument for waiver of the exhaustion requirement, it would have existed long before the complaint was filed in this case. It would have existed roughly under the laws and regulations that were in effect at the time that these claims were allegedly pending. The timeframe for issuing the decision would have been about 60 days. So the semantics get complicated here because I was using the word waiver twice but for different purposes, I think, in that sentence. Are you claiming that they have waived their waiver argument by not presenting it in a timely fashion, I guess under a laches theory or whatever? No, although I think there would be an argument for laches here. But no, what we've argued is simply that these remedies have not been exhausted and the circumstances of this case do not justify the waiver of the exhaustion under the test. So just out of curiosity, do you have some sort of a bright-line rule for us that would say how long claims can be pending before a valid futility argument can be made? In 11, you provide the services assuming that he provided them and they were legitimate. You don't get paid for 11 years. It seems like we're getting close, aren't we? Again, the only way I can answer that is how I have already, and that is that there was an administrative process in place to pursue those claims. There is now, and the rulemaking that Dr. relies on now doesn't support an argument for waiver of exhaustion. In fact, it suggests that the proper thing to do now is if he's able to demonstrate that he's time to file appeals as he alleged, then he should do that and pursue those at the administrative level. Are you willing to make a commitment on behalf of the government that they'll actually be processed within a reasonable period of time, however you would define that? I think the Secretary has said that in the new rulemaking. If he can demonstrate that there were, in fact, claims that were denied or downcoded and that a timely, valid appeal was filed on those claims, but a decision hasn't been issued, it requires demonstration of that fact as opposed to bare allegations. And these claims have not been specifically identified in the record. But you won't produce the records that would enable him to cooperate then? Well, and I think this issue gets confused, too, because the only administrative record that would exist in this case has to do with the 6,200 claims that were issued in the Medicare Appeals Council August 2009 decision. The only time an administrative record is prepared is once there's been a final decision by the Secretary that is being taken out of the paperwork. Am I right? Tell me if I'm right. The only paperwork there would be would be either their statements as to what they appealed or something that is in the hands of the contract. That's correct. Well, it might be a good idea for everyone to keep a copy of everything they send the government. Lots of people, in good faith, don't. So they would have to prove it. Of course, again, this is a subject question of proof. That is, if the doctor testifies to something or his office administrator that this is what we do, a judge would be perfectly entitled to believe that, right? Yes. Particularly if the contractor says, oh, yeah, everything from 2002 we've already thrown away. I'm not saying that's what it would be, but it's just a question of proof. It is a question of proof. And it's the same question of proof whether he would pursue administratively under the new rulemaking. He's either going to have to prove it there or he's going to have to prove it here. The reason I keep coming back to this thing about jumping the queue is that if you don't have that, then you're back at sort of trust me, we'll decide this eventually. And until we decide it, you interpose exhaustion, right? And I guess the only thing that I could add to that or possibly answer that question with would be that, one, and unfortunately this isn't in the record, but there was a manual provision in place at the time that if a provider asked for a carrier hearing without first receiving a review determination, then that carrier hearing request would be treated as a review determination. But that's really kind of a side point because the only question is were the claims exhausted and was there a justification for waiver? And there wasn't. Okay. One other question that I had just so I partially perhaps understand this. You say there's no record on the 8900 in the manner in which there is an administrative record for the 6200 because they had some sort of a redetermination date, right? They got to the council. They got to the council. There was an appeal. They got to the council. On the 6200. Yes. So focusing on the 8900 for a second, let me analogize this perhaps imperfectly to what happens in court. You file something with a court. There is that document that you file that exists in paper or electronically someplace, but there's also a chronological record of what's done. It's a docket sheet. So you seem to be suggesting that there's no record whatsoever that indicates somebody has filed a claim, where the claim stands, whether you timely appeal the initial denial, whether it's been down-coded or anything. Are these things just thrown in a shoebox and stuck on a shelf someplace? No, I don't think it's that simple for a paper. There's no electronic record that tracks the receipt of a claim and then where it stands in the process? Not for the secretary that I'm aware of or not at the Medicare Appeals Council level that I'm aware of. Instead, what we would have would be the initial claims that were submitted, whatever the determination was on those claims, and assuming that Dr. Boyle's allegations are true, then his request for a first-level appeal. That would have been filed with the carrier at the time. What has happened in the meantime is in 2005, the administrative appeals process changed, and later the players in that process changed, so you got a new carrier. And assuming that the allegations are true— So the old carrier now has no relation with the government? I don't know if I can say that. If they do, it's a different contract. But it might well be, and you don't even know if the records were handed over from the old carrier to the new carrier. My understanding is that all Part B records would have gone to a new carrier. So is that—I take it there is some sort of electronic record that's kept that keeps track of things, but it's kept by the carrier, not the secretary? Unfortunately, Your Honor, I'm not familiar enough with the process at that level to know the answer to the question. Part of the reason for that is that it has been our position from the first day we received a complaint in this case that if there are 8,900 claims out there for which administrative appeals have not been exhausted, then they were not properly before the district court, and we simply asked for a dismissal of those claims. Anything else? I think there is something to track those claims. I don't know what it would be. But unfortunately, again, the claims have not been identified sufficiently in this case for the secretary to be able to know which claims would have been at issue in any such appeal. Let me just ask you hypothetically. On those 8,900 claims, let's just assume that Dr. Little pursues them to success, whether it's all the way up to judicial review or where, and a good many of them actually are approved, some of them are along the administrative process, and they appear to be clean claims. And now we're 11 years down the pike. Would you still say that the doctor is not entitled to any interest on those claims because they were not granted at the initial stage? To answer that hypothetical, I believe, as you phrased it, the answer would be yes, because the determination, the denial, the initial denial would not have been because of some defect in the submission of the claims process. In other words, it wouldn't have been a question about whether the claim was clean or not, and there wasn't a timely initial determination made. But the yes is yes, they don't get any interest. I believe that would be the case, Your Honor. Thank you. If there's nothing else, we'll submit it. You might try to tell us something, if you work it into your time, about what you allege with respect to the 8,900. Why do you know anything about them? What's your record on them? But work that into whatever else you want to say. Okay. The 8,900 claims, we argue it would be an exercise in futility to attempt to go back under this new regulation. If the procedural gap still exists, Your Honor hit the nail right on the head. It has not corrected the problem. Counsel, I don't think you're answering my question. Why would you allege that there are 8,900 claims, and what's your support for it? Is there an affidavit? Is there a letter? Is there a record? It would be Dr. Little's testimony in his office records as to those 8,900 claims. And that testimony is in what record? It is not in the district court record because we never got to that point because the district court ruled as a matter of law it had no jurisdiction over the claims. Counsel, what I'm saying is you did not file an affidavit. No, Your Honor. Is there something in the complaint that says? It only identifies them by time period and 8,900 claims. There's not a listing, for example, in the statute. In the complaint somewhere it says, I submitted 8,900 claims on this day or in this time period. It talks about a time period, yes, but there's no Excel spreadsheet, for example, that says these are the patients, these are the numbers. Do you have any idea if such exists that it could be brought out in a criminal division? I think Dr. Little would be able to at least construct part of it. Now, the problem with the recordkeeping that you discussed is we have no confidence. Yes, those claims were submitted, as you indicated, by filing a document with the court. We have no confidence that those documents do exist. By example, what happened with 6,200 when they lost all the records and Dr. Little had to produce them a second time. But here's the problem. You seemingly say, well, we have to rely upon their records because we didn't keep copies of the records. So even if we were inclined to give your client relief or the district court to give you relief, how does anybody know what those claims are and the amount of those claims and whether they should or shouldn't have been downcoded and how much there were? Because there's no record of what they are. I think there is a record. The carrier should have the record of those. Dr. Little will have a listing. He will have a listing of those by patient identifier, date submitted, amount of the claim, the diagnostic code. He will. So he does have that record. But whether or not he has all the supporting – I'm sorry. So if he has that record, that identifies what claim he submitted, under what code, how much it is, what the patient was, then I don't understand the big problem about your not being able to get access to the carrier's records. You apparently have records of what these claims are, right? I think you can construct the list. When you submit those claims, you have to provide supporting medical record documentation and other things that I don't know still exist within his office. We may be able to identify a list, but whether the supporting documents are there may be another issue, and those were turned over to the carrier. So you – but you're very – you seem to me to be quite cautious in saying we can construct a list. Is there proof someplace available today that – not something you can go reconstruct down the road. Is there a record of these 8,900 claims that exist today other than arguably with a carrier? I believe at my instruction Ms. Thompson, who's here in the courtroom, constructed that list for me. Yes. But you haven't given it to anybody. I've identified it. You haven't filed it with anybody. I haven't, Your Honor, because we never got to that point. We were asking the district court to review them. I got it. I'm sorry. We've taken all of your time on that. Do you want to have a minute or two for other remarks? That's essentially it. We're not bargaining. I think you hit the nail on the head. We are stuck down there at the same level and we return to the same level. Interest should be paid on all of the claims. There's been no contention ever that any of the claims, all 14,000 plus, were anything but clean or – and there's been no contention by the government that they were timely addressed. Those are factual disputes that still need to be addressed in the lower court, and therefore some are judged as inappropriate on the denial of interest. Moreover, the government has cited what they call an implementing regulation with regard to Section 1395C2C, which is the provision that provides for interest. That implementing regulation refers to certain statutory sources but does not refer to that one in particular, and Your Honor is correct on the clear face of the statute. It says interest will be paid. Moreover, that 2009 regulation that the government is referring to was enacted years after these claims were initially tendered for process, and we would argue that Dr. Little had a vested right to rely on the laws applied at the time that he submitted the claims, and that would have been the statute provided for the payment of interest. Counsel, time is about to expire. Yes. On the complaint, I now see that there's a footnote. Footnote 1 refers to the 8,900 claims with multiple HIC numbers – that's health code numbers – and days of service in 2001-2002 that plaintiffs timely appealed on September 6, 2002. So you have a specific date. Yes. So I would assume that at least you ought to have a copy of the letter that you appealed in. And have – Oh, I'm sorry. Paragraph 49 says the secretary does not pay 365,000 of Group 1 claims, so I assume you have some kind of a listing that causes you to get that total. Yes, Your Honor. As I said, I have requested my client prepare for me so I would know the list. Okay. But whether we can produce the administrative record may be another question. At least in principle to prove that you would assert at least that you have a means to show that you did appeal, and in rough terms what you did appeal, so they can't say you were just off playing golf. Yes. We're not asking to exercise – to go down there in an exercise of utility and ask the court to review something that we can't show what was being asked. Okay. Thank you, Your Honor. Anything else, judges? Thank you. The case will be submitted. Court may call the next case.